**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
*mdb@kuzykclassactions.com*
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Facsimile: (213) 401-0311
Email:

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CHERIE KOUTOUFIDIS on behalf of herself and all others similarly situated,**<br><br>**Plaintiff,**<br>**v.**<br><br>**EDGEWELL PERSONAL CARE BRANDS, LLC**<br><br>**Defendant** | **CASE NO.:** '25CV3692 AJB DEB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiff Cherie Koutoufidis ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Edgewell Personal Care Brands, LLC ("Edgewell" or "Defendant") and on the basis of personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

## INTRODUCTION

1. This is a proposed class action on behalf of a California and multi-state class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Wet Ones Antibacterial Hand Wipes ("Products" or "Wipes").

2. This action seeks to redress Defendant's false and misleading marketing claims that its Wet Ones Wipes are "hypoallergenic" when, in fact, they are not.

3. Allergen-related contact dermatitis is an inflammation or irritation (e.g., rash) that results from an allergen coming in contact with the skin. It affects 20% of the population. As skin sensitivities have become more common, consumers increasingly seek out and rely on terms like "hypoallergenic" when making purchasing decisions about personal care products.

4. Defendant sells Wet One Wipes which prominently claim to be "hypoallergenic." The materiality of the representation is evident by its prominent placement on the principal display panel and its repetition elsewhere on the Product packaging.




5. The Product does not list any known allergen by name. It does, however, include "fragrance" among its inactive ingredients.[1]




[1] Upon information and belief. Edgewell sells 3 scented hypoallergenic Wet Ones Wipes including Fresh Scent (depicted above), Eucalyptus & Mint, and Tropical Splash (collectively "Class Products"), each of which include "fragrance" as an inactive ingredient in the Product.

6. The American Academy of Dermatology ("AAD") has recognized fragrances as a common skin irritant, source of allergens and a leading cause of allergic contact dermatitis. The federal Food and Drug Administration ("FDA") has similarly acknowledged that many cosmetics and personal care products may contain hidden allergens within their dyes, preservatives and, as is the case here, fragrances. Indeed, the FDA identified 26 fragrance allergens that "that cause the most allergic reactions from the use of cosmetic products.

7. Unfortunately, since manufacturers need only list 'fragrances' generically on a product label, without further revealing the sub constituents of such fragrances, consumers have no way of knowing whether a product also contains hidden allergens. Rather, they must rely exclusively on a manufacturer's label representations (*i.e.*, hypoallergenic).

8. Plaintiff commissioned independent analytical testing of Defendant's Products and discovered that they contain d-Limonene and Linalool, both widely recognized fragrance allergens. Defendant's inclusion of known fragrance allergens directly contradicts Defendant's voluntary claim that its Product is "hypoallergenic" thereby rendering it false and misleading.

9. The term "hypoallergenic" communicates to reasonable consumers that a product is specifically formulated to reduce the likelihood of allergic reactions, including, but not limited to, by avoiding the intentional inclusion of commonly recognized contact allergens.

10. Reasonable consumers must and do rely on manufacturers to honestly represent the qualities of their Products and ingredients.

11. Consumers, like Plaintiff, who purchased the Products have been deceived by Defendant's false and misleading claims that the Products are hypoallergenic. As a result of their reliance on Defendant's misrepresentations, Plaintiff and Class Members have suffered an ascertainable loss of money, including, but not limited to, out of pocket costs incurred in purchasing the Products or having

paid a price premium for the Products as compared to other wipes that do not make the same false and deceptive claims.

12. Throughout the applicable Class Period, Defendant has falsely represented the true nature of its Products, and as a result of this false and misleading labeling, was able to sell these Products to hundreds of thousands of unsuspecting consumers throughout California and the United States.

13. Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Koutoufidis is a resident of San Diego, California and Defendant Edgewell Personal Care Brands, LLC is Delaware corporation with its principal place of business in Shelton Connecticut. The amount in controversy exceeds $5,000,000 for the Plaintiff and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

15. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district.

## PARTIES

16. Plaintiff Cherie Koutoufidis is a resident of San Diego, California.

17. Ms. Koutoufidis purchased Defendant's Wet Ones Fresh Scent regularly from Target store locations in San Diego, California throughout 2023, 2024 and 2025.

18. Ms. Koutoufidis made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product was hypoallergenic.

19. Ms. Koutoufidis reasonably believed that the "hypoallergenic" representation meant that the Product was formulated to reduce the likelihood of allergic reactions and did not include commonly recognized fragrance allergens.

20. Ms. Koutoufidis believed that Defendant lawfully marketed and sold the Products.

21. Ms. Koutoufidis relied on Defendant's labeling and was misled thereby.

22. Ms. Koutoufidis would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth – *i.e.,* that the Product was not hypoallergenic, but instead contained known allergens.

23. Ms. Koutoufidis was injured in fact and lost money as a result of Defendant's improper conduct.

24. Plaintiff and members of the Class have been economically damaged by their purchases of the Products because the Product advertising was deceptive and/or misleading under California law and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

25. Defendant Edgewell Personal Care Brands, LLC is a Delaware limited liability company headquartered in Shelton Connecticut. It is a global personal care brand with more than 25 brands in its portfolio, among which are Wet Ones Wipes. Its

products are available for purchase online and in various retail locations throughout the country.

## GENERAL ALLEGATIONS

### A. HYPOALLERGENIC AND THE REASONABLE CONSUMER

26. Fragrance substances are naturally or synthetically derived organic compounds designed to impart scent or to mask unpleasant odors. Fragrances are ubiquitously found in personal care products. A fragrance formula may contain up to several hundred or more different ingredients that are not disclosed on product labels.

27. Contact allergies to fragrance ingredients occur when a susceptible individual has been dermally exposed to a fragrance allergen present in a consumer product. Sensitization can occur at any time. Once sensitization occurs, re-exposure can trigger allergic contact dermatitis.

28. Although the Food Drug and Cosmetic Act ("FDCA") does not define the term "hypoallergenic," the FDA has acknowledged that the term is used by manufacturers to describe products that are intended to produce fewer allergic reactions than regular products, and that such claims are material to consumers with sensitive skin.

29. Consistent with common understanding, reasonable consumers interpret "hypoallergenic" to mean that a product is formulated to reduce the likelihood of allergic reactions, including by avoiding ingredients widely recognized as common causes of allergic contact dermatitis when those ingredients serve no functional necessity beyond fragrance.

- "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[2]

[2] https://www.dictionary.com/browse/hypoallergenic

- "having little likelihood of causing an allergic response"[3]

- "designed to be less likely to cause allergic reactions" [4]

- designed to be less likely to cause allergic reactions (physical problems caused by particular substances) in people who use a product[5]

30. The FDA recognizes that "[t]he term 'hypoallergenic' may have considerable market value in promoting cosmetic products to consumers on a retail basis…" and that "[c]onsumers with hypersensitive skin, and even those with 'normal' skin, may be led to believe that [] [] products will be gentler to their skin than non-cosmetics." It explains, "[f]or many years, companies have been producing products which they claim are 'hypoallergenic' or 'safe for sensitive skin' or 'allergy tested.' These statements imply that the products making the claims are less likely to cause allergic reactions than competing products. . . ."[6]

31. Thus, Plaintiff believed, as would any reasonable consumer, that a product labeled hypoallergenic is less likely to cause an allergic response because it is formulated to minimize the presence of common allergens. In other words, Plaintiff and Class members reasonably believed that "hypoallergenic" as used by Defendant meant that, at a minimum, the Products would not contain commonly known fragrance allergens.

---

[3] https://www.merriam-webster.com/dictionary/hypoallergenic
[4] https://dictionary.cambridge.org/us/dictionary/english/hypoallergenic
[5] https://dictionary.cambridge.org/us/dictionary/english/hypoallergenic#google_vignette

[6] U.S. Food & Drug Administration, Hypoallergenic Cosmetics (2/25/2022). Available at https://www.fda.gov/cosmetics/cosmetics-labeling-claims/hypoallergenic-cosmetics#:~:text=Hypoallergenic

### B. THE MARKET FOR HYPOALLERGENIC PRODUCTS

32. A significant portion of the U.S. population has allergies that are triggered by skin care products. Allergic contact dermatitis is one of the most prevalent skin diseases in the U.S., affecting 20% of the population.[7] Personal care products frequently contain ingredients that may cause allergic contact dermatitis.

33. The risk of contact dermatitis from fragrance chemicals increases for those with compromised skin barriers. For individuals with sensitive skin or conditions like eczema, rosacea, or psoriasis, the use of fragranced products can be particularly problematic, exacerbating these conditions over time.

34. Even when there is no visible redness or rashes after using a product with fragrance chemicals, there may be inflammation at the cellular level and long-term consequences if use is prolonged. With repeated exposure over time, even individuals who initially tolerate fragranced products may develop allergies or sensitivities, sometimes leading to chronic skin issues.

35. Given the increased prevalence of allergic contact dermatitis and other skin conditions, consumers increasingly seek clean products looking for and relying on terms such as "hypoallergenic" in making purchasing decisions. Those who do not already suffer from skin allergies commonly seek products to avoid developing skin allergies. Those who do suffer from skin allergies, or with family members who suffer from skin allergies, seek products to avoid unknown and/or hidden allergens that will exacerbate or prolong their conditions.

36. Personal care companies, such as Edgewell have seized on this burgeoning market opportunity taking every chance to label and promote their products with terms such as "natural," "clean," and "hypoallergenic." As a result, "[t]he global sensitive skin care products market size, [] estimated at USD 44.60

---

[7] Alinaghi, F., et al., *Prevalence of contact allergy in the general population: A systematic review and meta-analysis*, October 29, 2018. https://doi.org/10.1111/cod.13119.

billion in 2023, [] is projected to reach USD 80.97 billion by 2030…. The market growth is attributed to significant rise in consumer awareness regarding skin sensitivities and the importance of using gentle and hypoallergenic products…. Increasing awareness about skin sensitivities and the demand for gentle and hypoallergenic products have contributed to the expansion of this market segment. Moreover, many brands [that] provide clear and concise information about the ingredients used in their body sensitive care products are gaining trust and loyalty from consumers."[8]

## C. PLAINTIFF'S ANALYTICAL TESTING OF DEFENDANT'S PRODUCTS

37. The issue of hidden allergens in cosmetic products is a concern well documented by the FDA. "Cosmetic products (such as soaps, lotions, face and eye make-up, fragrances, etc.) can provoke allergic reactions in some people. Many people suffer from allergies and anyone at any age can develop allergies."[9] In response to this concern, the FDA acknowledged the findings of the European Commission which conducted extensive research on fragrance allergens. The research culminated in a list of the 26 most common fragrance allergens. *Id.* The list specifically identified d-Limonene and Linalool among them.

38. Between September and November 2025, Plaintiff commissioned independent analytical testing of multiple retail units of Defendant's Products which were purchased at Target and on-line through Amazon. [10]

---

[8] Grandview Research, *Sensitive Skin Care Products Market (2024-2030).* Available at https://www.grandviewresearch.com/industry-analysis/sensitive-skin-care-products-market-report

[9] U.S. Food & Drug Administration, Allergens in Cosmetics, February 25, 2022. Available at https://www.fda.gov/cosmetics/cosmetic-ingredients/allergens-cosmetics.

[10] The following lot numbers were tested: 251538893, 25111N, and 252274219. Each of which

39. The testing employed headspace gas chromatography coupled with mass spectrometry ("GC/MS") to identify volatile and semi-volatile fragrance constituents.

40. The testing detected the presence of d-Limonene and Linalool, fragrance constituents widely recognized in dermatological and toxicological literature as common causes of allergic contact dermatitis. They are among the 26 fragrance allergens acknowledged by the FDA.

41. These fragrance allergens are not disclosed individually on the Product label and are present solely as components of the Product's fragrance formulation.

42. Defendant's inclusion of these known fragrance allergens renders its "hypoallergenic" representation false and misleading.




## REASONABLE CONSUMER

43. Defendant knew that one of the most important representations made on the Wet Ones' label is that the Product is "hypoallergenic."

44. Defendant placed the "hypoallergenic" representation prominently on the Product's principal display panel and repeated the representation elsewhere on the

packaging, demonstrating Defendant's intent that consumers see, notice, and rely upon the statement at the point of sale.

45. Reasonable consumers ascribe a common, shared meaning to words and phrases appearing on product labels, particularly where those words relate to health, safety, or skin sensitivity.

46. Reasonable consumers rely on product labels for their truth and accuracy and are entitled to do so without conducting independent scientific testing or ingredient analysis.

47. Reasonable consumers are not required to conduct research into undisclosed subcomponents of listed ingredients, such as fragrance constituents, in order to verify the truthfulness of express label claims.

48. Nor are reasonable consumers required to discount or disbelieve prominent front-of-package representations based on the mere possibility that undisclosed ingredients may contradict those representations.

49. Instead, it is the responsibility of product manufacturers to ensure that express labeling claims are truthful and not misleading in light of the Product's actual formulation.

50. Plaintiff and Class Members reasonably believed that Defendant's prominent front- and back-label statement that the Product is "hypoallergenic" was true.

51. Plaintiff and Class Members reasonably understood "hypoallergenic" to mean that the Product was formulated to reduce the likelihood of allergic reactions as compared to ordinary products, including by avoiding the intentional inclusion of ingredients widely recognized as common causes of allergic contact dermatitis.

52. This understanding is particularly reasonable where, as here, the allegedly hypoallergenic Product includes fragrance solely for sensory purposes and not for any functional or therapeutic necessity.

53. Defendant's "hypoallergenic" representation conveyed to reasonable consumers that the Product was suitable for sensitive skin and less likely to provoke allergic reactions than competing products that do not make such claims.

54. By deceiving consumers about the nature, quality, and formulation of its Product, Defendant was able to capture market share from competing products and command a price premium, increasing its own sales and profits.

55. Consumers lack the ability to test or independently ascertain the presence of fragrance allergens at the point of sale. Consumers therefore must and do rely on manufacturers to accurately disclose or avoid making misleading representations regarding allergenic risk.

56. At the time Plaintiff and Class Members purchased the Product, they did not know, and had no reason to know, that the hypoallergenic representations were misleading, deceptive, and unlawful.

57. Plaintiff and Class Members would not have purchased the Product, or would have purchased it on different terms, had known the truth.

## NO ADEQUATE REMEDY AT LAW

58. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

59. Broader Statutes of Limitations. The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations for damages claims under the CLRA.

60. Broader Scope of Conduct. The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. The UCL creates a cause of action for violations of other laws, which does not require, among other things, that a reasonable consumer would have been deceived in order to establish a violation. Thus, Plaintiff and Class members may be entitled to restitution

under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).

61. Defendant continues to misrepresent the Product claiming it is "hypoallergenic" thereby necessitating injunctive relief in order to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm).

62. Finally, this is an initial pleading. The adequacy and availability of all remedies, including legal and equitable, will not be resolved until the case is further advanced upon the closure of discovery, resolution of class certification and any potential summary judgment.

## **ECONOMIC INJURY**

63. Plaintiff sought to buy Products that were lawfully labeled, marketed, and sold.

64. Manufacturers charge a price premium for products that are labeled as hypoallergenic. Defendant intentionally included the "hypoallergenic" representation on the Product's label and in marketing materials to increase sales and/or charge a premium for the Product.

65. Plaintiff saw and relied on Defendant's misleading labeling of its Products.

66. Defendant knew or should have known that reasonable consumers would consider the representations material in deciding to purchase the Product.

67. Defendant knew or should have known that the representations could plausibly deceive reasonable consumers into believing that the Product is hypoallergenic and at a minimum does not contain common allergens.

68. Plaintiff believed that the Products were lawfully marketed and sold.

69. In reliance on the claims made by Defendant regarding the qualities of its Products, Plaintiff paid for Products that she would not have purchased or, at a minimum, a price premium.

70. As a result of her reliance on Defendant's misrepresentations, Plaintiff received Products that contained ingredients which she reasonably believed they did not contain.

71. Plaintiff received Products that were unlawfully marketed and sold.

72. Plaintiff lost money and thereby suffered injury as he would not have purchased these Products and/or paid as much for them absent the misrepresentation.

73. Defendant knows that the claim "hypoallergenic" is material to a consumer's purchasing decision.

74. Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amounts she paid for the Products she purchased, and/or in additional amounts attributable to the deception.

75. By engaging in the false and deceptive conduct alleged herein, Defendant reaped and continues to reap financial benefits in the form of sales and profits from its Products.

76. Plaintiff, however, would be willing to purchase products labeled as again in the future, including Defendant's Product, should she be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

77. However, Plaintiff will not be able to purchase Defendant's Product in the future, even though Plaintiff would like to, since simply viewing the ingredient list on Defendant's Product that displays the wording "hypoallergenic" on the label will not be enough to prevent Plaintiff from being deceived by Defendant's Product

since the sub-components of a fragrance need not be individually listed on the label thereby depriving the Plaintiff of any ability to determine existence of allergens in advance of purchase. Moreover, even if the information were made available, Plaintiff, as a reasonable consumer, does not have the scientific background or knowledge to make such a determination.

## CLASS ACTION ALLEGATIONS

78. Plaintiff brings this action on behalf of herself and on behalf of classes of all others similarly situated consumers defined as follows:

a. **California:** All persons in California who purchased the Class Products in California during the applicable Class Period; [11]

b. **Multi-State Breach of Warranty Class** All persons who purchased, during the applicable Class Periods, the Class Products in states with express warranty laws that are substantially similar to California law;[12]

c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.[13]

---

[11] Collectively referred to as "Class or Classes."

[12] Plaintiff preliminarily asserts the following states have express warranty laws that are substantially similar to California's breach of express warranty law: Arizona, Colorado, Florida, Illinois, Massachusetts, Michigan, Minnesota, Nevada, New Mexico, New York, Ohio, Oregon, Pennsylvania, Texas, Washington.

[13] The statute of limitations for Plaintiff' claims under California Civil Code § 1750, *et seq*., and for unjust enrichment is 3 years. Accordingly for these claims the Class Period begins 3 years prior to the date of the initial filing to the present. Plaintiff's claims under California's Business and Professions Code § 17200, *et. seq.,* California's Business & Professions Code § 17500, *et. seq.,* and for breach of express warranty have a statute of limitations of 4 years. Accordingly the Class Period for these claims begins four years prior to the date of filing to the present.

79. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

80. Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

81. Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

82. There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

83. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiff and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant has been unjustly enriched as a result of its unlawful business practices;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h. Whether Defendant's actions constitute breach of express warranty;

i. Whether Defendant should be enjoined from continuing the above-described practices;

j. Whether Plaintiff and members of the Class are entitled to declaratory relief; and

k. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

84. Plaintiff's claims are typical of the claims of the Class, in that Plaintiff is a consumer who purchased Defendant's Product. Plaintiff is no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

85. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation. Plaintiff and her counsel will adequately protect the interests of the Class.

86. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

87. In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

88. The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of Breach of Express Warranty[14]
### (On Behalf of a Multi-State Class)

89. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

90. Defendant made express warranties to Plaintiff and members of the Class that the Products they purchased were "hypoallergenic."

91. The "hypoallergenic" representation is a specific, affirmative statement of fact regarding the Products' formulation and allergenic profile which appears uniformly on every unit of the Product sold during the Class Period and was intended to, and did, become part of the basis of the bargain between Defendant and consumers.

92. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

---

[14] A.R.S. § 47-2313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Fla. Stat. § 672.313; 810 ILCS 5/2-313; Mass. Gen. Laws Ann. ch. 106 § 2-313; Mich. Comp. Laws § 440.2313 Minn. Stat. § 336.2-313; Nev. Rev. Stat. § 104.2313; N.Y. U.C.C. Law § 2-313; Ohio Rev. Code § 1302.26; Or. Rev. Stat. § 72.3130; 13 Pa. Cons. Stat. § 2313; Tex. Bus. & Com. Code § 2.313; Wash. Rev. Code § 62A.2-313.

93. Plaintiff and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

94. As alleged herein, the Products contain fragrance constituents, including d-Limonene and Linalool, that are widely recognized as common causes of allergic contact dermatitis and are inconsistent with the express "hypoallergenic" representation.

95. Defendant breached the express warranties made to Plaintiff and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

96. Plaintiff and the members of the Class paid money for the Products. However, Plaintiff and the members of the Class did not obtain the full value of the advertised Products. If Plaintiff and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff and members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

97. Plaintiff and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

98. Defendant was provided notice of the breach through the CLRA demand transmitted to Defendant on November 17, 2025, which was accompanied by a draft of this complaint (including the express warranty causes of action).

## SECOND CAUSE OF ACTION

**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

99. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

100. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

101. A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

102. Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

103. In accordance with California Business & Professions Code section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

104. Through its unfair acts and practices, Defendant obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff has been injured and requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, to disgorge the profits Defendant made on its Products,

and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## THIRD CAUSE OF ACTION

**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

105. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

106. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

107. A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

108. Defendant's acts and practices of mislabeling its Products in a manner to suggest they are "hypoallergenic" is fraudulent.

109. As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

110. In accordance with California Business & Professions Code Section 17203, and as Plaintiff lacks an adequate remedy at law, she seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

111. Through its fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to

Plaintiff and the Class, to disgorge the profits Defendant has made, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## FOURTH CAUSE OF ACTION

**Unlawful Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of the California Class)**

112. Plaintiff incorporates each and every allegation contained in the paragraphs above as if rewritten herein.

113. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

114. A business act or practice is "unlawful" if it violates any established state or federal law.

115. Defendant's labeling and marketing of the Products as "hypoallergenic" constitutes an unlawful business practice within the meaning of the UCL because it violates California's Sherman Food, Drug, and Cosmetic Law, Health & Safety Code section 111730 et seq.

116. Under the Sherman Act, a cosmetic is misbranded if its labeling is false or misleading in any particular. Health & Safety Code § 111330. California's Sherman Act expressly adopts the federal cosmetic misbranding standard set forth in the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 362(a).

117. Defendant labeled and marketed the Products as "hypoallergenic" despite the intentional inclusion of fragrance ingredients d-Limonene and Linalool that are widely recognized as common allergens. This representation created a false and misleading impression regarding the Products' formulation and allergenic profile.

118. Because the Products' labeling was false or misleading in a material respect, the Products were misbranded under 21 U.S.C. § 362(a) and Health & Safety Code § 111730.

119. Plaintiff does not seek to enforce the FDCA, nor does Plaintiff seek to impose requirements different from or in addition to those imposed by the FDCA. Plaintiff seeks to enforce California law that independently incorporates the federal misbranding standard and is actionable under the UCL.

120. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and members of the Class suffered economic injury, including payment of a price premium for Products that were falsely marketed as "hypoallergenic."

121. By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§ 17200, *et seq.*

122. Through its unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

**False Advertising**
**Violation of California Business & Professions Code §§ 17500, *et seq.***
**(On behalf of the California Class)**

123. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

124. Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are

deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

125. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

126. The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

127. Through its deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

128. As a result, and as they lack an adequate remedy at law, Plaintiff and the Class are entitled to equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched and pray for relief as set forth below.

129. Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**<u>SIXTH CAUSE OF ACTION</u>**

**Violation of the Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq*.**
**(On behalf of the California Class)**

130. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

131. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

132. Plaintiff and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

133. The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

134. Defendant has violated, and continues to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

135. Defendant knew, or should have known, that the labeling of its Products as hypoallergenic violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

136. The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for their decisions to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or

omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

137. Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiff and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

138. Plaintiff and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiff and the members of the proposed Class.

139. Plaintiff served a CLRA demand pursuant to Civil Code §1782 on November 17, 2025, notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. More than 30 days have passed and Defendant has failed to address Plaintiff's demands. Plaintiff now seeks the full measure of damages provided under Civil Code §1780.

## SEVENTH CAUSE OF ACTION
**Restitution Based On Quasi-Contract/Unjust Enrichment**

140. Plaintiff incorporates each and every allegation contained in the paragraphs above as if restated herein.

141. Plaintiff pleads this cause of action in the alternative and pursuant to California law.

142. Defendant's conduct in enticing Plaintiff and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

143. Defendant took monies from Plaintiff and the Class for these Products and have been unjustly enriched at the expense of Plaintiff and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and Class members.

144. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff, on behalf of herself and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiff be appointed Class Representative, and Plaintiff's counsel be appointed Lead Counsel for the Class.

B. Restitution in such amount that Plaintiff and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C. Compensatory damages for Causes of Action for which they are available.

D. Statutory penalties for Causes of Action for which they are available.

E. Punitive Damages for Causes of Action for which they are available.

F. A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G. An Order awarding Plaintiff her costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H. An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I. Such other and further relief as may be deemed necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all causes of action or issues so triable.

DATED: December 19, 2025

Respectfully submitted,

Michael D. Braun
**KUZYK LAW, LLP**
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone: (213) 401-4100
Email: mdb@kuzykclassactions.com

*Counsel for Plaintiff*